UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| HAROLD BLAINE FLYNN, JR., | ) | Civil No. 3:20-cv-00019-GFVT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **OPINION** |
| INTELLIGRATED SERVICES, LLC, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*

This matter is before the Court on Defendant Intelligrated Services, LLC's Motion to Dismiss the Complaint. [R. 4.] Intelligrated contends that Flynn's Complaint fails to state a claim upon which relief may be granted under Kentucky law. [*Id.*] For the reasons explained below, Intelligrated's Motion will be granted in part and denied in part.

**I**

Plaintiff Harold Blaine Flynn was employed as a Customer Service Engineer with Intelligrated from April 30, 2012 until November of 2019. [R. 1-1 at 4.] Mr. Flynn's job involved travelling across the country and required him to lift, install, remove, carry, and work on heavy machinery and equipment. [*Id.*] In August of 2013, Flynn was injured at a job site in Columbus, Ohio while attempting to install a bolt into a gearbox. [*Id.*] The gearbox in question had begun to slip and Flynn extended his arms, attempting to keep the gearbox from hitting the ground, and suffered a severe rotator cuff injury. [*Id.*] After the accident, Intelligrated asked Flynn how the accident could have been avoided. [*Id.*] After Flynn explained that a

transmission lift could protect employees, he alleges that Intelligrated dismissed the suggestion based on the cost. [*Id.*] Flynn began physical therapy for his injury and later resumed his work for Intelligrated. [*Id.* at 5–6.] Flynn's injured rotator cuff later deteriorated and required surgery and medical leave. [*Id.*]

Flynn returned to work in May of 2014 and was placed on medical restrictions by his physician. [*Id.*] Flynn alleges that Intelligrated ignored these restrictions and assigned him to his regular duties. [*Id.* at 6.] Flynn's rotator-cuff injury was exacerbated and he required a second surgery. [*Id.*] On September 12, 2014, Flynn's physician placed him on permanent medical restrictions, ordering him to lift no more than thirty-to-forty pounds and to perform no significant overhead lifting. [*Id.*] Flynn alleges that Intelligrated again assigned Flynn to his former position against the physician's restrictions and provided him no light-duty positions. [*Id.*]

On one occasion, due to logistical shortcomings at a job site in Beaver Dam, Wisconsin, Flynn asserts that Intelligrated terminated his superior Jim Metheny. [*Id.* at 6 –7.] According to Flynn, the Regional Director of Customer Services, Randy Schieffer, convinced Intelligrated to hire Metheny back as the Regional Manager of Customer Services instead. [*Id.* at 7.] As Flynn's direct supervisor, Flynn claims that Metheny was verbally abusive and hostile towards Flynn and others. [*Id.* at 7–8.] In August of 2015, Flynn texted Metheny to inform him that he was in the hospital. [*Id.* at 8.] Flynn subsequently went into a coma for one month due to a bleeding ulcer that burst and became septic. [*Id.*] Upon Flynn's return to work, Metheny allegedly submitted a negative performance evaluation of Flynn, criticizing Flynn for taking too much time off and for being out sick. [*Id.*] Flynn informed John Sorenson, Vice President of Field Services, of the review and Metheny was told to change it. [*Id.*] Flynn continued his

normal job duties after Intelligrated purportedly ignored his restrictions again, which eventually led to Flynn needing a reverse left shoulder surgery. [*Id.*] After the surgery, Flynn was once again placed on lifting restrictions by his physician. [*Id.*] Flynn began applying for vacant positions and training opportunities within the company that would have accommodated his physical impairment, any one of which required the approval of Metheney. [Id. at 8–9.] At every turn, however, Flynn states that Metheney denied his proposed accommodations out of animosity and hostility. [*Id.*] Flynn presents seven further occasions, from November 5, 2014 to June 5, 2015, wherein he was assigned to his normal job responsibilities after requesting an accommodation. [*Id.* at 9–10.]

After his second surgery on his left shoulder, Flynn injured his right shoulder loading his truck while preparing to drive to a job site in St. Louis, Missouri. [*Id.* at 11.] Flynn alleges that Metheney denied that such injury was work related and, as a result, Flynn was unable to receive any compensation for the next two years. [*Id.*] On February 2, 2020, Flynn initiated the present action based upon his claims for (1) discrimination based on disability, in violation of KRS § 344.040; (2) retaliation based upon disability, in violation of KRS § 344.280; (3) hostile work environment, in violation of the Kentucky Civil Rights Act; (4) promissory estoppel; and (5) workers compensation retaliation. [R. 1-4.]

## II

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual

3

inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Moreover, the facts that are pled must rise to the level of plausibility, not just possibility; "facts that are merely consistent with a defendant's liability ... stop[ ] short of the line between possibility and plausibility." *Iqbal*, 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. 544 at 557). According to the Sixth Circuit, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Twombly, 550 U.S. at 556).

A

1

In this action, Mr. Flynn asserts various claims under the Kentucky Civil Rights Act. First, Mr. Flynn alleges Intelligrated violated his rights under KRS § 344.040 which, among other things, prohibits employers from discriminating against employees on the basis of being a "qualified individual with a disability." Ky. Rev. Stat. Ann. § 344.040(1)(a). Because the language of the KCRA essentially reflects that of the Americans with Disabilities Act (ADA), courts interpret the KCRA consistent with the ADA. *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007); *Banks v. Bosch Rexroth Corp.*, 610 Fed.Appx. 519, 526 (6th Cir. 2015). KRS 413.120(2) states that a plaintiff must commence "[a]n action upon a liability created by statute, when no other time is

4

fixed by the statute creating the liability ..." within five years of the cause of action's accrual. KRS 413.120(2). Under the KCRA, "[c]ivil rights claims are governed by the five-year statute of limitations provided in KRS 413.120(2)." *See, e.g.*, *Ammerman v. Bd. of Educ.*, 30 S.W.3d 793, 798 (Ky. 2000). A KCRA "action for discrimination or retaliation accrues on the date the act of discrimination or retaliation occurs." *Walker v. Commonwealth*, 503 S.W.3d 165, 172 (Ky. Ct. App. 2016) (citation omitted). As Intelligrated notes in its Motion, Flynn filed his complaint on February 2, 2020. [*See* R. 3-1.] Consequently, any of Flynn's KCRA claims arising prior to February 2, 2015 are time-barred.

In support of his disability discrimination claim under the KCRA, Flynn asserts that he suffered a "severe rotator cuff injury" while at a jobsite in August of 2013. [R. 1-1 at 5.] Flynn asserts that after his injury, he was placed on work restrictions by his physician, which were subsequently ignored by Intelligrated, and Flynn was assigned to his former position. [*Id.*] Flynn then states that on September 12, 2014, his physician placed him on permanent restrictions "to lift no more than 30 to 40 pounds and to perform no significant repetitive overhead lifting." [*Id.*] Even with his physician-ordered permanent restrictions, "[a]gain, and against those Restrictions, the Defendants assigned Mr. Flynn to his former position … so Mr. Flynn resumed his work … [t]he Company offered no light-duty positions to him." [*Id.*]

Flynn asserts that Intelligrated refused to accommodate his physician-ordered restrictions and thus failed to provide him reasonable accommodations under KRS § 344.040. [*Id.* at 12.] Because Flynn states that Intelligrated first failed to accommodate him sometime after his initial workplace injury in 2013 and sometime before his physician ordered permanent restrictions on September 12, 2014, the cause of action accrued, and the KRS 413.120(2) five-year limitations period began to run, in this time period (i.e., the date of the alleged discriminatory action that

gave rise to this claim). Because the limitations period for the relevant conduct would have expired, best case scenario, on September 12, 2019, any alleged discriminatory conduct from 2013 to February 1, 2015 is time barred and Intelligrated is entitled to judgement as a matter of law as to those particular series of events.

In support of his disability discrimination claim, Flynn argues that the Defendants engaged in continued discriminatory behavior beyond the February 2, 2015 cutoff. [R. 7 at 9.] Flynn cites to four jobs that he was assigned to after February 2, 2015, none of which accommodated his disability. [*See* 1-1 at 9 –10.] A *prima facie* failure-to-accommodate case under the KCRA requires a plaintiff to show:

> (1) that he is disabled, and (2) that he is otherwise qualified for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation.

*Fisher v. Nissan North America, Inc.*, 951 F.3d 409, 417 (6th Cir. 2020) (quotations omitted) (citing *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 868 (6th Cir. 2007)). A Plaintiff must show that he "requested and was denied" a reasonable accommodation. *Burns v. Coca–Cola Enterprises, Inc.*, 222 F.3d 247, 258–59 (6th Cir. 2000). Further, the Plaintiff must show that the accommodation was reasonable and that he proposed such accommodation to his employer. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010) (citation omitted). A request for a reasonable accommodation need not include "magic words," like accommodation, disability, or ADA, but the request must be tied to plaintiff's existing medical restrictions. *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004).

Reasonable accommodations may include "making existing facilities ... readily accessible to and usable by individuals with disabilities;" and "job restructuring, part-time or modified work

6

schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations[.]" 42 U.S.C. § 12111(9). "In determining whether an accommodation is reasonable, the employer must consider (1) the particular job involved, its purpose, and its essential functions; (2) the employee's limitations and how those limitations can be overcome; (3) the effectiveness an accommodation would have in enabling the individual to perform the job; and (4) the preference of the employee." *Keever v. City of Middletown*, 145 F.3d 809, 812 (6th Cir.1998) (citing 29 C.F.R. § 1630.9(a), appendix). An employer does not fail to provide a reasonable accommodation, however, when there is more than one accommodation, and the employer chooses "[a] less expensive accommodation[,][an] accommodation that is easier to provide [,]" *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir.1996), or an accommodation other than the accommodation that the employee prefers. *Trepka v. Bd. of Educ.*, No. 00–4063, 2002 WL 104801, at *3 (6th Cir. Jan.24, 2002). Flynn need not prove his *prima facie* failure to accommodate case in his Complaint at the motion to dismiss stage, but "is still obligated to allege facts from which an inference can be drawn that all the material elements of [his] claim can be proven." *Mullet v. Colormatrix*, 2014 WL 1794583, at *4 (N.D. Ohio 2014).

      As to the four specific jobs that Flynn cites, spanning from February 17, 2015 to June 5, 2015, Flynn has alleged a *prima facie* case for disability discrimination that survives the motion to dismiss stage. Flynn's Complaint alleges that he was disabled within the meaning of the KCRA and the ADA. [R. 1-4 at 12.] The ADA's broad definition of disability includes "a physical or mental impairment that substantially limits one or more major life activities of such individual …[and] a record of such impairment; or … being regarded as having such an

7

impairment." 42 U.S.C. § 12102(1)(A)–(C). Some major life activities include "standing, lifting, [and] bending." *Id.* at (2)(A). Flynn claims that Intelligrated discriminated against him by not accommodating his known physical limitation, which constricted his ability to perform some of the lifting functions that were routinely required in his Customer Service Engineer position. [*See* R. 1-4 at 4.] Further, Flynn asserts that on multiple occasions in 2015 he sought relocation to other vacant positions within Intelligrated that would have been able to accommodate his physical impairment. [*See* 1-4 at 8.] Flynn asserts that each of these proposed accommodations were denied by Metheney. [*Id.*] Consequently, Flynn's request for a reasonable accommodation was tied to his physical impairment. Flynn has alleged sufficient facts for his non-time-barred failure-to-accommodate claims to survive the present motion to dismiss.

**2**

Flynn claims that he received a negative performance review in retaliation for taking a leave from work while in the hospital. [R. 1-4 at 12–13.] Under Kentucky law, it is unlawful for a person to "retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter." KRS § 344.280(1). As with disability discrimination claims, Kentucky courts look to federal law for guidance when considering claims brought under KRS § 344.280. *Mountain Clay, Inc. v. Commonwealth, Comm'n on Human Rights*, 830 S.W.2d 395, 396 (Ky. Ct. App. 1992). In the present case, to make out a *prima facie* case of retaliation, an employee must demonstrate that:

> (1) he was engaged in opposition to practices made unlawful by Title VII ... (2) his activity was protected (3) he was subjected to adverse treatment by the employer or labor union, and (4) there was a causal connection between his opposition or participation and the retaliation.

*Id.*; *see Brooks v. Lexington–Fayette Urban Cnty. Housing Auth.*, 132 S.W.3d 790, 803 (Ky. 2004). Intelligrated argues for dismissal of Flynn's retaliation claim, asserting that Flynn did not engage in a protected activity. [R. 4-1 at 11–12.] Under the KCRA, an employee engages in protected activity by "contesting any unlawful employment practice." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir.1989). Further, to establish a causal connection between the protected activity and the adverse employment action, Flynn must produce sufficient evidence to permit a reasonable inference that the exercise of the protected activity caused the adverse action. *Nguyen*, 229 F.3d at 563. No one factor is dispositive.

Flynn has not set out sufficient facts to allege a *prima facie* case of retaliation and seems to misconstrue the requirements of the claim. Flynn claims that Metheny "retaliated against [him] in evaluations by giving [him] bad reviews for being hospitalized while in a coma and caring for his daughter." [R. 1-4 at 13.] However, in order to comply with the requirements of a retaliation claim, Metheny's bad review presupposes that Flynn opposed some practice of Intelligrated that is declared unlawful by KRS § 344.280. By no logical leap does Flynn being hospitalized represent him (1) opposing a practice declared unlawful by KRS § 344.280, or (2) making a charge, filing a complaint, testifying, assisting, or participating in any manner in any investigation, proceeding, or hearing under KRS § 344.280. KRS § 344.280(1). Additionally, insofar as Flynn alleges retaliation from Metheny based upon Metheny's personal animus [*see* R. 1-4 at 6–7], such behavior does not relate to disability discrimination and does not constitute "protected activity."

As a result, Flynn's hospitalization does not qualify as protected activity because it does not constitute "mak[ing] an overt stand against suspected illegal discriminatory action." *Comiskey v. Auto. Indus. Action Grp.*, 40 F.Supp.2d 877 (E.D.Mich.1999); *see Booker*, 879 F.2d

9

at 1313 (holding that a "vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice"). Flynn has failed to adequately allege that he engaged in protected activity and his complaint does not state a claim for retaliation that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

3

Flynn also states a hostile-work-environment claim under the KCRA based largely upon the same factual predicate as his retaliation claim. [R. 1-4 at 14.] Even assuming he was subject to a hostile workplace, Flynn "can only state a claim if the harassment he endured stemmed from a protected activity under the KCRA." *Krueger v. Home Depot USA, Inc.*, 674 Fed.Appx. 490, 495 (6th Cir. 2017). As discussed above, because Flynn did not contest an unlawful employment practice or any other action protected by KRS § 344.280, he did not engage in a protected activity under the KCRA. *See id.* As a result, Intelligrated is also entitled to judgement as a matter of law as to of Flynn's hostile-work-environment claim.

4

In his promissory estoppel claim, Flynn alleges that Intelligrated failed to "follow its own policies on sick-days and notice … [and] engaged in a constructive scheme to overwork and squeeze Mr. Flynn out of work without reasonable or just cause." [R. 1-4 at 15.] In other words, Flynn alleges that Intelligrated constructively terminated Flynn by failing to adhere to its internal policies.

An "at-will employee can claim promissory estoppel only if [he] can show a specific promise of job security." *Harris v. Burger King Corp.*, 993 F.Supp.2d 677 (W.D. Ky. 2014) (citing *DePrisco v. Delta Air Lines, Inc.*, 90 Fed. App'x 790, 796 (6th Cir. 2004)); *see Downs v. Bel Brands USA, Inc.*, 2014 WL 4211199 (W.D. Ky. 2014). Even accepting Flynn's allegations

10

as true, just as in *Downs* and *Dorger v. All-State Ins. Co.*, No. 2:08–56, 2009 WL 1248989 (E.D.Ky. May 1, 2009), Flynn has not shown that Intelligrated made any express statement between employer and employee which altered the at-will relationship. Further, even taking Flynn's allegations in the Complaint as true, there is no claim that Intelligrated made any specific promise regarding job security. *See Downs* 2014 WL 4211199, at *6. Intelligrated is entitled to judgment as a matter of law as to Flynn's promissory estoppel claim.

5

In his last claim, Flynn argues that Intelligrated "is in direct violation of workers' compensation laws in Kentucky for not providing [him] with the appropriate compensation for his work injuries." [R. 1-4 at 16.] Notably, Flynn cites KRS § 342.020(1), which requires employers to "pay for the cure and relief from the effects of an injury or occupational disease the medical, surgical and hospital treatment … as may reasonably be required at the time of the injury and thereafter." KRS § 342.020(1) is distinct from § 342.197, which prohibits employees from being "harassed, coerced, discharged, or discriminated against in any manner" for filing an action under Chapter 342. KRS § 342.197(1). As Intelligrated properly highlights, even though the claim in Flynn's Complaint is titled "Workers Compensation Retaliation," Flynn cites and sets out a claim for workers' compensation *benefits* under KRS § 342.020(1). [*See* 1-4 at 15–16.] In his Response, Flynn attempts to remedy his claim by citing and arguing the elements of KRS § 342.197(1), however, "[a] response to a motion to dismiss is the improper forum for asserting a new claim." *Richter v. Seterus, Inc.*, No. 15-CV-12874, 2016 WL 8200520, at *2 (E.D. Mich. May 16, 2016) (citing *Morris v. Iron Workers' Local No. 25 Pension Fund*, Case No. 2:09-CV-11007, 2010 WL 6428507, at *7 (E.D. Mich. Dec. 7, 2010), *report and recommendation adopted*, 2011 WL 1303145 (E.D. Mich. Mar. 31, 2011)) (rejecting plaintiffs'

11

agency theory of liability because "[p]laintiffs did not allege an agency theory of liability in their complaint").

Analyzing Flynn's claim under KRS § 342.020(1), Intelligrated is entitled to judgment as a matter of law. This Court is without jurisdiction to hear such a claim. *See Doctors Hospital of Augusta, LLC v. Kentucky*, 2018 WL 1748112 at *3 (E.D. Ky. 2018). Kentucky has outlined administrative procedures for Workers' Claims. KRS §§ 342.0011 *et seq.* Disputes arising from payment, nonpayment, reasonableness, necessity, or work-relatedness of a covered service must be resolved by an administrative law judge. 803 KAR 25:012. The decision of the administrative law judge can be appealed to the Workers' Compensation Board and then to the Kentucky Court of Appeals. 803 KAR 25:010; CR 76.25.

### III

Accepting the factual allegations in the complaint as true, Flynn has failed to plead a plausible claim upon which relief may be granted for retaliation based on discrimination, hostile work environment, promissory estoppel, his workers' compensation claim, and portions of his disability discrimination claim. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Intelligrated Services, LLC's Motion to Dismiss [**R. 4**] is **GRANTED IN PART** as to Counts II, III, IV, and V, as well as the time-barred claims found within Count I;

2. The abovementioned claims are hereby **DISMISSED** with prejudice; and

3. Defendant Intelligrated's Motion [**R. 4**] is **DENIED IN PART** as to the non-time-barred portions of Count I.

This is the 8th day of March, 2021.

Gregory F. Van Tatenhove
United States District Judge